# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Kenneth Dinkins,<br><br>    Plaintiff<br><br>v.<br><br>Geraldine Schinzel,<br><br>    Defendant | Case No.: 2:17-cv-01089-JAD-GWF<br><br>**Order (1) Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and (2) Granting in Part and Denying in Part Defendant's Motion for Summary Judgment**<br><br>[ECF Nos. 109, 112] |

After defendant Geraldine Schinzel purchased land from plaintiff Kenneth Dinkins through an online auction, Schinzel made several posts about Dinkins on the website RipoffReport.com. Dinkins sued Schinzel, claiming that her colorful comments damaged his business reputation and caused him emotional distress. Schinzel counterclaimed on fraud and contract theories, alleging that, after defrauding her in the real-estate transaction, Dinkins defamed her.

Dinkins and Schinzel cross move for summary judgment. Dinkins requests judgment on all his claims and Schinzel's counterclaims, while Schinzel requests judgment only on Dinkins's claims. I grant both motions in part and deny them in part, and I order the parties to a mandatory settlement conference before a magistrate judge.

**Background**

While much remains disputed, the parties generally agree to the following events: In August 2015, Schinzel placed the winning bid of $1,030 for a parcel of land in Arizona that Dinkins listed for auction on eBay.com.[1] After the auction, Dinkins contacted Schinzel, telling

---
[1] ECF Nos. 109 at 40, 111-2 at 3.

her that she had won the auction, asking what name (or names) she wanted to appear on the deed, and telling her that the total cost for the land and the deed was $1,325.[2] Schinzel paid Dinkins and soon thereafter received the deed via email.[3] Sometime later, Schinzel learned that $206 was owed in back taxes on the property.[4] She notified Dinkins and he agreed to pay them, but never did.[5] This lead Schinzel to begin an online investigation into Dinkins, through which she found postings about him on RipoffReport.com.[6] Schinzel then wrote a complaint of her own, stating that Dinkins was "a scam artist" who had been "kicked off eBay for selling properties that did not belong to him."[7] Over the next several months, Schinzel wrote at least seven more posts about Dinkins, calling him a thief, a criminal, and a scam artist who "prays [sic] on trusting individuals" like Schinzel and stalks and harasses consumers.[8]

      Finally, in April 2017, Dinkins filed this suit against Schinzel, asserting five causes of action: (1) libel per se, (2) libel by implication, (3) intentional interference with a potential business advantage, (4) intentional infliction of emotional distress, and (5) civil assault.[9] I granted Schinzel's motion to dismiss Dinkins's civil-assault claim in July 2017.[10] Schinzel answered Dinkins's complaint and pled five counterclaims against him: (1) fraud, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) public disclosure

---

[2] ECF No. 111-3 at 1.
[3] ECF Nos. 109 at 40, 111-2 at 3.
[4] ECF Nos. 109 at 41, 111-2 at 3.
[5] *Id.*
[6] ECF No. 111-2 at 4, 12–25.
[7] ECF No. 109 at 51.
[8] *Id.* at 53, 55, 58, 60, 62, 64, and 66.
[9] ECF No. 1.
[10] ECF No. 18.

of private facts, and (5) libel per se.[11] Dinkins moves for summary judgment on all his claims and Schinzel's counterclaims.[12] Schinzel opposes Dinkins's motion[13] and brings her own, requesting summary judgment on only Dinkins's claims.[14] Because of the significant overlap in argument and evidence, I address both motions together.

**Discussion**

**A.  Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[15] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[16] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[17]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific

---

[11] ECF No. 70.

[12] ECF No. 109

[13] Schinzel argues that I should construe Dinkins's motion as one for reconsideration because he previously filed a summary-judgment motion in this case. ECF No. 27. However, in arguing this point, she ignores the fact that I denied that motion without prejudice, explicitly granting Dinkins permission to file a new motion for summary judgment once discovery closed. ECF No. 68 at 4. I therefore decline to consider his motion as one for reconsideration.

[14] ECF No. 112.

[15] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[16] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[17] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

3

facts showing that there is a genuine issue for trial."[18]  "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[19]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[20]  When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[21]  The movant need only defeat one element of the claim to garner summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[22]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both  motions before ruling on each of them."[23]

---

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[19] *Sonner v. Schwabe North American, Inc.*, ___ F.3d ___, ___, 2018 WL 6786616, at *2 (9th Cit. Dec. 26, 2018).

[20] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

[21] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[22] *Celotex*, 477 U.S. at 322.

[23] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

## B. Evidentiary Objections

Both parties make much of the authentication and admissibility of exhibits. The parties seem to rely on—without citing to—the standard set forth in *Orr v. Bank of America*, which requires evidence to be authenticated and admissible in its present form for it to be considered at the summary-judgment stage.[24] However, the 2010 amendments to Federal Rule of Civil Procedure 56 "eliminate[d] th[is] unequivocal requirement" and mandate only that the *substance* of the proffered evidence would be admissible at trial.[25] Accordingly, I will not, as each party requests, disregard all exhibits for lack of proper authentication because their substance could be admissible at trial.

The parties attempt to make more specific evidentiary objections, but neither specifies the nature of their blanket objections. Instead, each party lists dozens of paragraphs of the other's declaration and states that one or more of up to three objections apply to each.[26] I decline the parties' invitations and disregard their blanket objections.

Dinkins's only properly asserted evidentiary objection is about attachments 2 and 3 to Schinzel's declaration.[27] These attachments are the posts on RipoffReport.com that Schinzel claims she viewed before posting her own comments about Dinkins on the same site. Dinkins

---

[24] *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

[25] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016); *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment; *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017); *Fraternal Order of Police, Lodge I v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 *4th Cir. 2015); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012).

[26] ECF Nos. 111 at 10–11, 118 at 3–4.

[27] ECF No. 118 at 4.

claims these postings are inadmissible hearsay,[28] while Schinzel argues that they are not hearsay because she is not submitting them for the truth of the matter asserted but rather to show that she was aware of previous posts when she made hers.[29] Schinzel is correct: she does not argue that the contents of these two postings is true. Instead, she seems to have attached them to prove that she did research about Dinkins before posting her own comment. For that reason, I overrule Dinkins's objection to these exhibits. Schinzel raised several proper evidentiary objections throughout the course of her argument on the merits of Dinkins's claims that I address below.

## C. Dinkins's Claims

### 1. Libel per se

A plaintiff must satisfy four elements to succeed on a defamation claim "(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."[30] Libel is defamation in a written format. If a writing communicates "a person's lack of fitness for trade, business, or profession, or tends to injure the plaintiff in his or her business, it is deemed defamation per se, and damages are presumed."[31] Generally, "only assertions of fact, not opinion, can be defamatory."[32] But "expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist [that] will be sufficient to render the message defamatory if false."[33]

---

[28] *Id.*

[29] ECF No. 121 at 11.

[30] *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009).

[31] *Id.* (quoting *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993)) (internal quotation marks omitted).

[32] *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001).

[33] *Id.* (citation omitted).

Dinkins argues that he is entitled to summary judgment on his libel per se claim because Schinzel published multiple statements calling him—among other things—a criminal, a thief, and a scam artist.[34] He asserts that the online name-calling was false and tended to injure his business, making them libelous per se.[35] Schinzel asserts that she is entitled to judgment as a matter of law because the statements she made about Dinkins were actually true and, even if they weren't, they were opinion not based in fact.[36]

The context of Schinzel's statements suggests that she knows certain facts that could render the statements defamatory if those facts were proven false. For example, her first post claims that Dinkins "was truly kicked off eBay for selling properties that did not belong to him."[37] In that same post she mentions that she has spoken to Dinkins on the phone, is "working with a lawyer" to "bring this theif [sic] to justice," and that she intends to buy Dinkins's own property on which he owes four years of back taxes.[38] All these statements are statements of fact about what she claims to know Dinkins is up to, not statements of opinion about his character. Particularly, the assertions that he "truly" was kicked off eBay and that Schinzel was working with a lawyer tend to imply that Schinzel knew facts that render the statement potentially defamatory if they were false.

But neither party has presented evidence proving the truth or falsity of the facts asserted, so neither has satisfied the movant's burden on summary judgment. For Dinkins to prevail, he must prove the falsity of Schinzel's statements because he bears the burden of proof on that

---

[34] ECF No. 109 at 12–14.
[35] *Id.* at 14.
[36] ECF No. 112 at 10–12.
[37] ECF No. 118 at 55.
[38] *Id.*

element at trial. Conversely, Schinzel—because she's raised the defense of truth—must show there is no dispute that the statements are true. For example, related to the fact that Schinzel called Dinkins a criminal, Dinkins notes that Schinzel produced no documents to show that he had been arrested for or convicted of any crime while Schinzel asserts that, arrests or not, Dinkins has broken several laws in running his business. But neither party proves their case, so the truth of the statements remains in dispute. I cannot rule as a matter of law that either party is entitled to judgment at this stage—especially because "[w]hether a statement is false is generally a question for the jury."[39] I therefore deny both parties' motions for summary judgment on Dinkins's libel per se claim.

### 2. Libel by Implication

Dinkins titles his second count "defamation by implication," presumably to differentiate between the statements he alleges are defamation per se and those that he believes are not defamatory on their face. Nevada recognizes defamation per se (discussed above) and defamation per quod—defamation that "does not appear from the words themselves, but arises from extrinsic circumstances" that, "when viewed with the statement, conveys a defamatory meaning."[40] This claim has the same elements as defamation per se; the difference is that damages are presumed for defamation per se, but for defamation per quod, the plaintiff must prove damages as a result of the defendant's statements.

Dinkins identifies two statements as libelous by implication: (1) the statement that he did not have a job, and (2) the statement that Schinzel received a warranty deed to a lot with taxes

---

[39] *Nevada Independent Broadcasting Corp. v. Allen*, 664 P.2d 337, 413 (Nev. 1983).

[40] *Ornatek v. Nev. State Bank*, 558 P.2d 1145, 1147 (Nev. 1977); *see also Fink v. Oshins*, 49 P.3d 640, 646 (Nev. 2002) (holding that even if someone merely inferred a defamatory meaning from statements from the context of conversation, that may be enough to establish defamation).

8

owed on it and with someone else's name on the deed.[41] Dinkins asserts that these statements, while true on their face, were made to imply something defamatory about him.[42] However, by asserting that the statements are true, Dinkins defeats his own claim. The first element for a claim of defamation—that the statements were false—still applies to a defamation-by-implication claim. The difference is that the defamatory meaning of the statement is implied from the context of the publication. Because Dinkins admits that these statements were true, his claim fails as a matter of law. Accordingly, I grant summary judgment in Schinzel's favor on Dinkins's defamation-by-implication claim.

### 3. Intentional Interference with Prospective Economic Advantage

To establish the tort of intentional interference with a prospective business advantage, a plaintiff must prove:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.[43]

Dinkins argues that he is entitled to summary judgment on this claim because he has proved that Schinzel, by posting negative comments about him, intentionally interfered with his business of buying and selling real estate and coaching others to do so.[44] Schinzel responds that Dinkins hasn't shown that she interfered with any specific contractual relationship, and even if

---

[41] ECF No. 109 at 17–18.
[42] *Id.* at 18, ¶ 76.
[43] *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987).
[44] ECF No. 109 at 14–15.

9

he had, he hasn't shown that she was aware of that potential relationship, that she intended to interfere with it, or that he has shown actual harm as a result.[45]

Dinkins ignores the fourth element in his motion, and thus has not shown that he is entitled to summary judgment on this claim. As the party with the burden of proof, Dinkins must show that there is no dispute of material fact on all elements of his claim. By failing to present any evidence on one of the elements, he hasn't shown that he is entitled to judgment as a matter of law on this claim at this stage.

Schinzel, however, has shown that Dinkins lacks evidence to show a genuine factual dispute as to the actual-harm element of this claim. To show actual harm, Dinkins attaches emails and text messages that he claims are from potential buyers or sellers who ended their relationship with him after reading Schinzel's posts.[46] Schinzel responds that these documents are hearsay,[47] and Dinkins fails to argue in reply that either a hearsay exception applies or the information in those exhibits could be presented in an admissible form at trial, and I do no readily perceive a path to admissibility for this evidence. I therefore sustain Schinzel's hearsay objection to Dinkins's exhibits X and X-1. Without those exhibits, Dinkins cannot show that he suffered actual harm. Schinzel need only show that Dinkins lacks evidence to support one element of his claim to succeed at summary judgment on a claim for which Dinkins bears the burden of proof. I therefore grant Schinzel's summary-judgment motion on this claim.

---

[45] ECF No. 112-2 at 9–10.
[46] ECF No. 109 at 111–113.
[47] ECF No. 111-1 at 10.

### 4. Intentional Infliction of Emotional Distress (IIED)

A claim for IIED requires a plaintiff to prove that the defendant engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress or bodily harm.[48] To be extreme and outrageous, the conduct must be "outside all possible bounds of decency and regarded as "utterly intolerable in a civilized community."[49] "[P]ersons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind."[50]

Schinzel first argues that her conduct was not extreme and outrageous.[51] Dinkins alleges that Schinzel harassed him via email, text, postings on Ripoff Report, and phone.[52] He presents an email in which she threatens to shut down his business;[53] text messages where she berates him, calls him names, and continues to text him after being asked to stop;[54] internet postings from Ripoff Report where she calls him a criminal and a scam artist;[55] and a phone record he claims shows that she called him at 3:50 am.[56] Outside of listing the conduct that he alleges to be extreme or outrageous, Dinkins doesn't argue how Schinzel's behavior falls outside the bounds of decency. Proving that Schinzel did, in fact, do the things alleged is one thing, but the

---

[48] *Franchise Tax Bd. of Cal v. Hyatt*, 335 P.3d 125, 147 (Nev. 2014).
[49] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation and internal quotations omitted).
[50] *Id.*
[51] ECF No. 112-1 at 11.
[52] ECF No. 109 at 16–17.
[53] *Id.* at 127.
[54] *Id.* at 124.
[55] *Id.* at 51–66.
[56] *Id.* at 136.

question of whether the aggregate of that conduct was extreme or outrageous enough to make Schinzel liable for IIED is another. And that question has not been settled as a matter of law.

But even assuming that Dinkins has shown that Schinzel's behavior was extreme and outrageous, Schinzel argues, Dinkins lacks sufficient evidence to show that he suffered extreme or severe emotional distress.[57] A plaintiff must set forth "objectively verifiable indicia" to establish that the plaintiff "actually suffered extreme or severe emotional distress."[58] All that Dinkins offers in support of his emotional-distress injury is the statement in his response to Schinzel's motion that he suffered stress, loss of sleep, and headaches.[59] Dinkins needs evidence to support his claim—this kind of conclusory argument in a brief falls short of establishing the burden that Rule 56 places on summary judgment.[60] So, even if the totality of Schinzel's conduct was extreme and outrageous, Dinkins's claim for IIED fails on this basis. I thus grant Schinzel's motion for summary judgment on this claim.

**D.    Schinzel's Counterclaims**

**1.    Fraud**

To succeed on her claim for fraud, Schinzel must show that (1) Dinkins provided a false representation of a material fact, which he knew to be false; (2) Dinkins intended Schinzel to rely on the misrepresentation; (3) Schinzel detrimentally relied on the misrepresentation; and (4) the misrepresentation proximately caused damages.[61] Dinkins argues that Schinzel cannot

---

[57] ECF No. 112-1 at 11.

[58] *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).

[59] ECF No. 118 at 29.

[60] *Id.* (finding deposition testimony was insufficient to show severe or extreme emotional distress where plaintiff failed to seek medical or psychiatric assistance and presented no other "objectively verifiable indicia" of the severity of his emotional distress).

[61] *Chen v. Nev. State Gaming Control Bd.*, 994 P.2d 1151, 1152 (Nev. 2000).

12

demonstrate a triable issue of fact as to a false representation that he made.[62] Schinzel alleges that Dinkins told her that he personally owned the land and was licensed to sell real estate in Arizona, that he failed to tell her there was a tax lien on the property, and that he misrepresented the entity that transferred the land to her.[63] Dinkins contends that Schinzel cannot prove that he implied that he personally owned the land because she did not submit the original eBay posting.[64] He further asserts that Schinzel can't base this claim on the allegedly defective warranty deed because she acknowledged that she received the recorded deed and that 100% of the ownership was transferred to her and her joint tenant.[65] As to the rest of her allegations, Dinkins asserts that Schinzel has no evidence to prove that Dinkins made any of the representations that she alleges were false.[66] Schinzel responds that Dinkins made false representations and concealed certain information knowing that she would rely on those representations.[67] She asserts that Dinkins's ad did not state that the property was being sold "as is" and didn't mention that the property was encumbered by back taxes.[68]

The parties make these arguments without citation to one key piece of evidence: the original eBay listing for the property. The original listing presumably contains all the representations Dinkins made—and upon which Schinzel could have relied—about the property before Schinzel bought it. The competing narratives about the content of the ad shows there is a

---

[62] ECF No. 109 at 18.
[63] ECF No. 70 at 20.
[64] ECF No. 109 at 19.
[65] *Id.* at 19–20.
[66] *Id.* at 20–21.
[67] ECF No. 111-1 at 13.
[68] *Id.* at 14.

genuine dispute about it, and it is a material fact underlying Schinzel's counterclaim for fraud. I therefore deny Dinkins's motion for summary judgment on this counterclaim.

**2. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

To prevail on a breach-of-contract claim under Nevada law, the plaintiff must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.[69] Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution."[70] "The implied covenants of good faith and fair dealing impose a burden that requires each party to a contract to refrain from doing anything to injure the right of the other to receive the benefits of the agreement."[71] To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied.[72]

Dinkins's only argument against these two counterclaims is that there was no contract between him and Schinzel.[73] He contends that the first element of both these claims is the

---

[69] *Richardson v. Jones*, 1 Nev. 405 (1865).

[70] *A.C. Shaw Constr. v. Washoe Cty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205); *see also Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007) ("It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair actions by one party that work to the disadvantage of the other.").

[71] *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016) (quotation omitted).

[72] *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991)).

[73] ECF No. 109 at 21–22.

14

existence of a contract and, for various reasons, Schinzel cannot prove a contract existed between them. Dinkins responds that she does not have to present a contract if she can show writings proving that a contract existed.[74] She points to the email from Dinkins informing her that she had won the auction and the fact that she received a deed from Dinkins as evidence that the parties had a contract regardless of any specific writing.[75]

"Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration."[76] "[W]hether a contract exists is one of fact."[77] Schinzel, through her bid on the eBay listing, offered to pay $1,030 to receive a deed to the land parcel and acceptance came with Dinkins's email notifying her that she won the auction. In that email, Dinkins agreed to send Schinzel a warranty deed in exchange for $1,325 (the $1,030 winning bid and $295 to cover the document fees).[78] Two days later, Dinkins emailed Schinzel to confirm that he had sent her the recorded deed.[79] This shows at least a question of fact about whether the parties had a contract, and Dinkins makes no other argument about why he is entitled to summary judgment on these claims. For that reason, I deny his motion for summary judgment on Schinzel's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing.

---

[74] ECF No. 111-1 at 14.
[75] *Id.*
[76] *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).
[77] *Id.*
[78] ECF No. 111-3 at 1.
[79] *Id.*

15

### 4. Public Disclosure of Private Facts

To succeed on her counterclaim for public disclosure of private facts, Schinzel must show that (1) Dinkins publicly disclosed private facts about her, and (2) the disclosure of those facts would be offensive and objectionable to a reasonable person of ordinary sensibilities.[80] Dinkins argues that he is entitled to summary judgment on this claim because the fact that Schinzel claims he disclosed—that her mother recently died—was already public.[81] Schinzel claims that the issue of her mother's passing was not of the concern to the public, so posting it to harass her is offensive.[82]

There is no liability for public disclosure of private facts when the defendant merely gives further publicity to information about the plaintiff that is already public.[83] In response to Dinkins's requests for admissions, Schinzel admits that her mother's obituary was published online.[84] Dinkins cannot be held liable for public disclosure of private facts when the fact that he disclosed was already readily available to the public on the internet—no matter how distasteful it was to do so. I therefore grant summary judgment in Dinkins's favor on this counterclaim.

### 5. Libel Per Se

Finally, Schinzel pleads a libel per se counterclaim in which she alleges that Dinkins published several statements that she was involved in criminal activity (stalking), has mental issues, and had been fired.[85] Dinkins contends that he is entitled to summary judgment on this

---

[80] *State v. Eighth Judicial Dist. Court*, 42 P.3d 233, 240 (Nev. 2002).
[81] ECF No. 109 at 22.
[82] ECF No. 111-1 at 15.
[83] *Montesano v. Donrey Media Group*, 668 P.2d 1081, 1085 (Nev. 1983).
[84] ECF No. 109 at 80–81.
[85] ECF No. 70 at 23.

counterclaim because all his statements are true.[86]  He argues that Schinzel continuing to text him after he asked her to stop constitutes stalking, making her a criminal.  He also claims that Schinzel's comments about him on Ripoff Report show that she has mental issues because they are all false.  Finally, he contends that his statement that she was fired is true because she refused to offer proof of employment.

Dinkins has not shown that his statements about Schinzel are true.  His speculation that Dinkins was "crazy" because her statements about him were "fabricated" is not proof that she has mental issues.  Her failure to supply proof of employment doesn't mean that she was fired.  And stating that she texted Dinkins repeatedly does not prove that she was stalking him.  The question of the truth or falsity of these allegations is best left to a jury, and there is a question of fact about whether Dinkins's statements were true.  I therefore deny summary judgment on this counterclaim.[87]

## Conclusion

IT IS THEREFORE ORDERED that Dinkins's motion for summary judgment **[ECF No. 109] is GRANTED** as to Schinzel's counterclaim for public disclosure of private facts; it is DENIED in all other respects.

IT IS FURTHER ORDERED that Schinzel's motion for summary judgment **[ECF No. 112] is GRANTED** as to Dinkins's defamation by implication, intentional interference with a potential economic advantage, and IIED claims; it is DENIED in all other respects.

---

[86] ECF No. 109 at 24.

[87] As to Dinkins's assertion that his statements were privileged because he was defending his character, he makes that claim with no legal citation and there is no such defense to defamation.

17

This order leaves the following claims pending: Dinkins's claim for libel per se; and Schinzel's counterclaims for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and libel per se.

IT IS FURTHER ORDERED that **this case is REFERRED to a magistrate judge for a MANDATORY SETTLEMENT CONFERENCE**. The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

Dated: January 24, 2019

_____
U.S. District Judge Jennifer A. Dorsey